*In re* MARRIAGE OF NANCY H. CARLSON, Petitioner-Appellee, and CHARLES K. CARLSON, Respondent-Appellant.

First District (1st Division)   No. 1—88—1788

Opinion filed July 17, 1989.

Mammas & Goldberg, Ltd., and Arthur Neuman, both of Chicago (Jerry S. Goldberg and Evan James Mammas, of counsel), for appellant.

Enrico J. Mirabelli, of Amari, Mirabelli & Associates, of Chicago (Colleen M. Minogue, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Petitioner Nancy Carlson obtained a judgment for dissolution of marriage, which respondent Charles Carlson moved to vacate on the grounds of unconscionability and duress. The motion was denied. Charles appeals. For the reasons below, we affirm.

Charles and Nancy were married on July 16, 1977, and lived together until April of 1985, when Nancy moved to Lyons, Illinois. Charles remained at the marital residence in Berwyn, a two-flat in which the couple had lived in one apartment and rented the other. They had no children.

On May 7, 1985, Nancy filed a petition for dissolution of marriage. On May 28, 1985, Nancy obtained an *ex parte* temporary restraining order to prevent Charles from harassing her. On August 23, 1985, Charles appeared and filed his response to the petition for dissolution.

In January 1986, Nancy filed a petition for a second temporary restraining order, and on February 10, 1986, an agreed preliminary injunction was entered, restraining Charles from disposing of any property owned either jointly or solely by Nancy. Subsequently, the parties engaged in discovery and negotiations.

On September 4, 1987, Nancy filed an emergency petition for relief from dissipation of marital assets from mortgage foreclosure. The petition alleged that Charles, who had been collecting rent from the marital residence since the separation, had used the rent money for personal use, had failed to make the mortgage payment on the marital residence, and that the mortgage holder, Olympic Federal, threatened foreclosure. The trial court entered an *ex parte* order on the petition, giving Nancy exclusive possession of the residence and the right to collect rents, and ordering Charles to vacate by September 7, 1987. Charles was also ordered to pay the overdue amount on the mortgage and make all payments necessary to stop the pending foreclosure. The order further continued contempt proceedings against Charles for violation of the order of February 10.

On September 10, 1987, an oral agreement was reached after negotiations concerning the disposition of marital assets, and the parties appeared before the trial court for a proveup hearing. Both parties were present and represented by counsel. Nancy testified to the provisions of the agreement and was cross-examined. Charles testified that Nancy's testimony concerning the provisions of the agreement was accurate and that he thought the provisions fair. The principal terms of the agreement were: (1) both parties waived maintenance; (2) Charles would sign a quitclaim deed which Nancy would accept and indemnify Charles for any claims arising from his previous ownership except utility bills; (3) Charles would sign the title of their car over to Nancy; (4) all debts except the mortgage and real estate taxes would be the debt of the party incurring it; and (5) the parties waived all right or interest to any personal property held by the other at the time of the judgment. The trial court entered the judgment for dissolution of marriage. Subsequently, a typewritten copy of the judgment was submitted to Charles' attorney for Charles' signature. Charles refused to sign.

On November 10, 1987, Charles' attorney moved to withdraw

from the case. On December 1, 1987, the court granted the attorney's motion to withdraw. Charles was not present at that hearing because his notice of hearing had directed him to the wrong building. The court also entered judgment for dissolution of marriage *instanter*, on Nancy's emergency motion. By his new attorney, Charles moved to vacate the judgment for dissolution.

In an evidentiary hearing on the motion to vacate on March 31, 1988, Charles testified that his first attorney had presented the typed judgment for his signature on the date of a hearing on the contempt charge. Charles testified that his attorney told him that if he did not accept the agreement, he "would have to pay immediately an additional $5,000 in attorneys' fees for the trial of this cause." Charles testified he did not enter into the agreement voluntarily, but had agreed because he was fearful of going to jail because of the contempt proceeding that was pending. The trial court denied the motion to vacate. Charles appeals.

Charles argues that there was no enforceable settlement between himself and Nancy because their oral agreement was not effectively reduced to writing and because the oral agreement was unconscionable and entered into under duress. Charles also argues that the notice of the hearing of December 1, 1987, which directed him to the wrong building, deprived him of due process. Both arguments are without merit.

Charles first argues that there was no valid settlement agreement because the parties intended to reduce their oral agreement to writing, and he did not sign the written agreement presented to him by his attorney. Charles also contends that the agreement contained no provisions for credits for his payments on the mortgage, bank accounts, pensions, personal property, or the automobile.

The record shows no intention by the parties to reduce the oral agreement to writing, only the intention of the parties to present a typed copy of the judgment, with the record, to the trial court. What Charles calls a written agreement was not an "agreement," but a typed copy of the judgment. The judgment that was entered on December 1, 1987, was based on the oral agreement to which both parties had testified at the proveup hearing, and is unequivocally consistent with the record. Both parties testified that an oral agreement had been reached, and Nancy testified to the terms of that agreement. Charles testified that Nancy had stated the terms accurately and that they were fair.

Charles also contends that the judgment was fatally incomplete, asserting that page 5 of the six-page judgment for dissolution of mar-

riage is missing from the record. Although page 5 does not appear in the record, Nancy's brief was supplemented with a complete judgment. The paragraphs on page 5 specifically address the pension, personal property, which includes the bank accounts, the mortgage, and the automobile, and are supported by specific testimony from the proveup hearing. The transcript of the proveup hearing on September 10 clearly shows that the parties reached an oral agreement which is accurately reflected in the judgment.

■■ ■ Section 502(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par 502(a)) allows oral agreements for the disposition of marital property, but Charles argues that here the oral agreement was unconscionable and that he entered it under duress. To determine whether a settlement agreement is unconscionable, the court will look to the circumstances under which the agreement was made and the relative economic positions of the parties that result. (*In re Marriage of Foster* (1983), 115 Ill. App. 3d 969, 751 N.E.2d 915.) Examination of the record shows that Charles freely entered into the agreement and that the terms are not so unfair as to make the agreement unconscionable.

■ Charles further claims that the *ex parte* order of September 4, 1987, which granted to Nancy possession of the residence and required him to vacate, created oppressive negotiating circumstances because he did not receive the order until September 7, just three days before the oral agreement was made. But there is no reason to conclude that the order of September 4 placed Nancy in a vastly superior bargaining position. Nor is there any indication that the parties, by virtue of economic circumstances, education, experience, intellect, or access to legal counsel, were unable to negotiate at arms' length. Although the oral agreement arose from negotiations that took place on September 10, the same day as the proveup, there is no indication that they were hasty. Further, the parties had engaged in discovery and negotiations before September 10, and Charles testified that he found the terms of the oral agreement fair.

■ Nor is there evidence of duress. Charles contends that his attorney threatened him with additional fees, but the so-called "threat" occurred in a meeting with the attorney after the oral agreement was made. There is no evidence at all that Charles was taken advantage of, misled, or deprived of his free will by Nancy or his own attorney. Charles also contends he feared the consequences of the contempt proceeding, but as Nancy notes, the fear of the contempt was of Charles' own making; he faced the contempt charge regardless of his posture on the judgment.

■ Finally, Charles argues he was deprived of due process because his notice of the hearing on December 1, 1987, sent him to the wrong building. Assuming, *arguendo*, that the notice did not satisfy due process standards, the error was harmless. The judgment entered on December 1, 1987, was based on the hearing of September 10, 1987, in which Charles was present and represented by counsel, and in which he testified that he agreed to the terms of the oral agreement. Charles had a second hearing on the motion to vacate the judgment. Charles had the opportunity to be heard twice, had benefit of counsel both times, and cannot successfully claim lack of notice since he was represented and participated in those hearings. Thus the proceeding on December 1, 1987, did not prejudice Charles, and any error due to defective notice of that proceeding was harmless.

In summary, we find Charles' arguments to be without merit. There was no intent to reduce the oral settlement agreement to writing, and what Charles terms the written agreement was a typed copy of the judgment. The oral agreement was not unconscionable, and there was no evidence of duress. Because Charles was afforded ample opportunity to present his case in evidentiary hearings with representation, any error that might have occurred due to defective notice was harmless. The judgment of the circuit court is affirmed.

Affirmed.

MANNING, P.J., and BUCKLEY, J., concur.