*In re* MARRIAGE OF L. THOMAS LAKIN, Petitioner-Appellant, and PHYL-
LIS JEAN LAKIN, Respondent-Appellee.

Fifth District   No. 5—94—0423

Opinion filed March 12, 1996.

DAVIS, J., dissenting.

Gail G. Renshaw and Roy C. Dripps, both of Lakin Law Firm, P.C., of Wood River, and J. William Lucco, of Lucco, Brown & Mudge, of Edwardsville, for appellant.

David Fahrenkamp, of Edwardsville, and Stephen C. Carlson, Gerald D. Kelly, and Eric S. Mattson, all of Sidley & Austin, of Chicago, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, L. Thomas Lakin, appeals from entry of a property settlement by the circuit court of Madison County. On appeal, petitioner raises for our consideration the following issues: (1) whether the trial court abused its discretion when it entered a judgment order based on an earlier oral property settlement agreement when both parties contested certain provisions of that agreement at the hearing on entry of the judgment order; and (2) whether

petitioner was deprived of due process because notice of the June 17, 1994, hearing on entry of the judgment order was given June 16, 1994, when both petitioner and his lead attorney were out of state and unable to attend the hearing. We reverse and remand.

## I

Petitioner and respondent, Phyllis Jean Lakin, were married in October of 1982 and separated in March of 1992. Two children were born to the parties, Kris, born July 8, 1983, and Karey, born November 15, 1985. Petitioner filed a petition for dissolution of marriage on April 8, 1992. Respondent filed a response and counterpetition for dissolution on May 8, 1992.

The issues of property division, maintenance, and custody all were disputed. Petitioner and respondent were able to arrive at a joint custody agreement, which was entered on May 9, 1994. On May 16, 1994, the parties appeared for a scheduled hearing on the dissolution petitions. Prior to hearing any evidence, the parties reached an oral agreement resolving all remaining issues. At the hearing, petitioner's attorney read into the record the terms of the settlement agreement reached by the parties. Under the terms of the agreement, petitioner was to pay child support and the children's education expenses through a master's degree and cover medical and dental expenses. Respondent, pursuant to the terms of the agreement, would receive certain sums of money over a five-year period plus 6% interest on the unpaid balance of the settlement, the residence in Wood River, the profit-sharing plan at petitioner's law firm, a Jeep, an individual retirement account (IRA), various furniture, and personal property. Additionally, petitioner would pay respondent's current charge card expenses. Respondent waived maintenance. The parties agreed to pay their own attorney fees.

Petitioner was to receive the balance of the property including all funds in certain brokerage accounts except for respondent's IRA, all interest in his law firm stock and loans, all interest in Argosy Gaming Company (stock and notes), and all interest in other business enterprises, plus various notes. Petitioner also received the former family home in East Alton and other residential and commercial real estate properties.

At the hearing, the court asked the parties whether they understood the settlement and agreed to all its provisions. The parties stated they agreed with the terms and provisions. Then the trial court found the settlement agreement to be fair and reasonable and adopted the settlement "as the order of the court." The court ordered petitioner's counsel to draft a written judgment order reflecting the

agreement, within seven days, and to submit it to court and counsel. Respondent's counsel would have four days in which to present any objections.

On May 24, 1994, petitioner's counsel sent copies of the proposed judgment order to the trial court and respondent's attorney. Respondent's attorney made no objections to the proposed judgment order during the four-day time limit set by the court. In the interim between May 24, 1994, and June 16, 1994, petitioner had conversations with his attorneys and accountants regarding the tax implications of the wording in the agreement.

Because the judgment order had not been entered as of June 13, 1994, respondent's counsel attempted to reach petitioner's attorney regarding the matter. During a telephone conference with one of petitioner's attorneys, respondent's counsel, and Judge Hennessey on June 16, 1994, the judge said he would be available on June 17, 1994, to enter the judgment order if the judgment conformed with the terms orally agreed to at the May 16, 1994, hearing. The parties were aware that petitioner's counsel, William Lucco, would not be available on June 17, 1994, due to a previously scheduled vacation. Further, petitioner was in Seattle, Washington, and would not be present at the June 17, 1994, hearing.

At the June 17, 1994, hearing both parties were represented by counsel. Joseph Brown, an attorney with Lucco's law firm, was present at the hearing but was not personally familiar with petitioner's case. Brown objected to the hearing because the short notice did not permit petitioner the opportunity to make arrangements to attend and because Lucco was not present due to a scheduled vacation. Additionally, Brown objected to entry of the judgment order on the grounds that petitioner wanted language suggested by his accountant included in the agreement concerning his business interests. Respondent expressed concern about the provisions involving petitioner's payment of credit charge accounts and respondent's cooperation in preparation of the couple's 1993 income tax returns. Respondent's position at the hearing was that the judgment order should be entered so that respondent could begin to receive the moneys owing to her and that any dispute concerning specific provisions could be addressed through post-trial proceedings.

No testimony was taken during the hearing, and the trial court concluded there was no reason to delay entry of the judgment if, upon its review, the judgment comported with the agreement entered into the record on May 16, 1994. The court stated that any clarification concerning one or more aspects of the judgment could be addressed at a later time. On June 20, 1994, the court entered the judgment order. Petitioner appeals.

## II

Petitioner contends that the trial court abused its discretion when it entered a judgment order, based upon an earlier oral property agreement, that contained provisions contested by both petitioner and respondent. Petitioner further argues that the trial court should have delayed entry of the settlement judgment to permit petitioner to present evidence on the tax consequences of the agreement and to respond to the issues raised by respondent concerning certain provisions of the agreement. We agree.

■ It is well established that the law favors the amicable settlement of property rights in cases of marital dissolution. *In re Marriage of Lorton*, 203 Ill. App. 3d 823, 825, 561 N.E.2d 156, 158 (1990). A fair oral property agreement made in good faith will be enforced where the terms of the alleged agreement are sufficiently definite and certain. *In re Marriage of Parr*, 103 Ill. App. 3d 199, 203-04, 430 N.E.2d 656, 659 (1981). However, the property settlement between married persons, particularly when substantial financial assets are involved, " 'cannot be concluded by the parties' oral consent when it is diligently challenged by one spouse *before* a decree has been entered.' " (Emphasis added.) *In re Marriage of Perry*, 96 Ill. App. 3d 370, 373, 421 N.E.2d 274, 276-77 (1981), quoting *Crawford v. Crawford*, 39 Ill. App. 3d 457, 462, 350 N.E.2d 103, 108 (1976).

■ In the case at hand, petitioner's attorney objected to the court's entry of the judgment order on the basis of tax consequences arising from the proposed settlement agreement. Respondent, on the other hand, wanted the proposed judgment order entered even though she objected to two provisions of the settlement. Both parties anticipated the need for further litigation via post-trial motions to clarify and interpret the disputed provisions should the proposed judgment be entered. Given the prospect of continuing litigation to resolve disputes over the provisions of a proposed settlement, the trial court, in distributing property, "should seek a high degree of finality so that [the] parties can plan their future with certainty and are not encouraged to return repeatedly to the courts." *Hollensbe v. Hollensbe*, 165 Ill. App. 3d 522, 528, 519 N.E.2d 40, 44 (1988).

While generally oral property settlements are binding upon the parties (*In re Marriage of Lorton*, 203 Ill. App. 3d 823, 827, 561 N.E.2d 156, 159 (1990)), we conclude the oral agreement here is not one which could routinely be reduced to written judgment because (1) petitioner, before entry of the judgment, raised significant concerns regarding the tax consequences that could impact the economic circumstances of the parties, (2) respondent also raised concerns regarding her tax liability and the payment of credit card debts, and (3) the

significant likelihood of protracted post-judgment litigation over the disputed provisions of the settlement agreement. In light of the circumstances involved here, we conclude that the oral property settlement cannot be concluded by the parties' oral consent when material features of the settlement are challenged by the parties before entry of the decree. *Crawford*, 39 Ill. App. 3d at 462, 350 N.E.2d at 108.

## III

Petitioner next contends that the trial court abused its discretion by entering the judgment order without granting petitioner an evidentiary hearing regarding the tax consequences of the proposed settlement. We agree.

■ Section 503(d)(12) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503(d)(12) (West 1992)) requires that the trial court consider "the tax consequences of the property division upon the respective economic circumstances of the parties" in the division of marital property. When a substantial property settlement is involved and a party alleges tax consequences of the settlement or judgment, that party should be permitted to present evidence relevant to that agreement. *In re Marriage of Frazier*, 164 Ill. App. 3d 207, 209, 517 N.E.2d 775, 776 (1988). "*So long as the trial court has considered all the factors enumerated in section 503*, its decision will not be disturbed absent an abuse of discretion." (Emphasis added.) *Frazier*, 164 Ill. App. 3d at 210, 517 N.E.2d at 777.

■ In the case before us, the trial court clearly abused its discretion in refusing to consider, in the context of a hearing to enter a judgment of dissolution, petitioner's concerns regarding the tax consequences of the proposed property settlement. At the June 17, 1994, hearing, petitioner's substitute counsel informed the court of petitioner's position that entry of the judgment should be delayed to allow for insertion of specific language to address tax consequences. Petitioner had consulted his accountant and his attorney regarding the tax consequences of the settlement and wanted to present to the court evidence of the need for specific language to address the tax concerns. The tax consequences of the settlement were not discussed during the oral prove up of the property settlement at the May 16, 1994, hearing. The trial court, by refusing to grant petitioner the opportunity to present evidence as to the necessity of inserting specific language in the judgment to address the tax concerns, failed to meet its statutory mandate to consider the tax implications of the division of marital property. 750 ILCS 5/503(d)(12) (West 1992).

Finally, respondent contends that petitioner should be required to pay her costs for prosecution of this appeal because this appeal is

frivolous and was taken for the purpose of harassment and delay. We disagree.

■ Supreme Court Rule 375(b) provides that "[a]n appeal or other action will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." 155 Ill. 2d R. 375(b). A party may also be sanctioned for bringing an appeal for an improper purpose such as to harass, delay, or cause needless expense. 155 Ill. 2d R. 375(b).

■ Petitioner's arguments on appeal are well founded and warranted by existing law. "[U]nder an objective standard of conduct a reasonably prudent attorney in good faith" would have brought this appeal. *Ben Franklin Financial Corp. v. Davis*, 226 Ill. App. 3d 414, 421-22, 589 N.E.2d 857, 862 (1992). Furthermore, we find no indication in the record that petitioner brought the instant appeal to delay resolution of this matter or to harass respondent. Accordingly, we decline respondent's request for an award of attorney fees and costs.

Because of our decision herein, we need not address petitioner's due process claim.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and the cause is remanded for an evidentiary hearing to include the tax consequences of the proposed property settlement.

Reversed and remanded with directions.

KUEHN, J., concurs.

JUSTICE DAVIS, dissenting:
I respectfully disagree with my colleagues regarding whether the trial judge abused his discretion when he entered a judgment order based on an earlier oral property settlement. Our decision in *In re Marriage of Lorton*, 203 Ill. App. 3d 823, 561 N.E.2d 156 (1990), controls the disposition of this case. In *Lorton* we held that a fair oral property agreement made in good faith will be enforced where the terms of the agreement are sufficiently definite and certain. That is exactly the situation here.

Following lengthy negotiations, on May 16, 1994, the parties, *with their respective attorneys*, appeared before Judge Hennessey. They stated that an oral agreement had been reached, and the terms of the agreement were read into the record by J. William Lucco, *attorney for Mr. Lakin*. Mr. Lucco not only read the terms of the agreement into the record, but he also indicated he would draft the judg-

ment (which he later did). Mr. and Mrs. Lakin were placed under oath and stated, in response to the court's questioning, that they heard, understood, and agreed with the settlement described in open court, that they were not forced into the agreement, and that they were satisfied with their attorneys' services. Each of the parties stated that they understood the agreement to be *final*. Judge Hennessey went on to find the agreement "fair, reasonable, and not unconscionable." He adopted the agreement as the order of the court and announced to the parties: "*What that means, for the benefit of Mr. and Mrs. Lakin, is that agreement is now locked in. There will not be any changing of the minds as you leave this courtroom.*" (Emphasis added.)

Mr. Lakin apparently did not believe the court, because later, in spite of the judge's admonition, he claimed he had overlooked some tax considerations. This came about after he, through his attorney, had drafted the judgment. By June, the judgment had still not been entered, and the judge announced on June 17, 1994, that he would look over the proposed judgment submitted by Mr. Lakin's counsel, and if it reflected the settlement described at the May hearing, he would sign it. While it is correct that Mr. Fahrenkamp (attorney for Mrs. Lakin) disputed language in the draft judgment, the record does not indicate any dispute regarding the substance of the oral agreement. The majority is of the opinion that this dispute over language is enough to bring this case within the parameters of *In re Marriage of Perry*, 96 Ill. App. 3d 370, 421 N.E.2d 274 (1981), and *Crawford v. Crawford*, 39 Ill. App. 3d 457, 350 N.E.2d 103 (1976). I disagree.

The facts in *Crawford* are substantially different from those before this court. In *Crawford*, there is no indication that the trial court approved the settlement at the time of the prove up hearing, as the court did here. Furthermore, the *Crawford* court set aside the settlement agreement on public policy grounds, the agreement's "manifest inequity and unfairness." Apparently, the plaintiff had not been advised by her attorney, prior to the prove up hearing, of the terms of the settlement, and the plaintiff testified that she had never agreed in principle to the terms of the oral settlement. The settlement agreement was "hastily contrived immediately before the prove-up hearing" and "the plaintiff *** expressed her aversion to [and] immediately disavowed her prior consent to [the agreement]." *Crawford*, 39 Ill. App. 3d at 462, 350 N.E.2d at 107-08.

The facts amounting to "manifest inequity and unfairness" in *Crawford* are simply not present in this case. In this case neither party has ever stated they were not consulted by their respective counsel. To the contrary, both parties testified they were fully ap-

prised by counsel and they were in total agreement that the agreement reached was in fact what they desired.

*Perry* relied heavily on *Crawford*. *Perry* is factually dissimilar to this case and is equally inapposite.

In *Lorton*, we explicitly recognized that an oral settlement agreement recited in open court is "valid and binding." We stated that the husband was "bound to the agreement he knowingly made in open court," and we concluded that the trial court correctly granted the motion of the wife to effectuate the settlement agreement. We took note of the lengthy negotiations, the meetings with counsel before the hearing, and the presentation of the proposed settlement agreement *in detail* in open court. We further noted that the parties and the attorneys represented to the court that what was presented to the court constituted their understanding of the agreement, and at no time preceding, during, or after the hearing did the petitioner object to terms of the agreement. *Lorton*, 203 Ill. App. 3d at 826-27, 561 N.E.2d at 159.

Those facts are almost identical with the case at bar, yet the majority chooses to follow the dissimilar situations in *Perry* and *Crawford*. *Crawford* has been distinguished on this point in numerous other courts. *E.g.*, *In re Marriage of Maher*, 95 Ill. App. 3d 1039, 420 N.E.2d 1144 (1981); *In re Marriage of Steichen*, 163 Ill. App. 3d 1074, 517 N.E.2d 645 (1987). By its opinion today, the majority effectively overrules *Lorton*.

Mr. Lakin argues, and the majority agrees, that he should be given another bite of the apple. Mr. Lakin claims he is entitled to a hearing to present further evidence. In substance, he is making a motion to reopen the proofs. Yet the majority does not discuss the proper standard for ruling on such a motion.

The decision to deny a motion to reopen proofs is within the sound discretion of the circuit court, and unless the court abused its discretion, the court's decision should not be disturbed on review. A court's decision to grant or deny such a motion rests upon the consideration of the following factors: whether there is some excuse for the failure to introduce the evidence at trial, whether the other party will be surprised or unfairly prejudiced by the new evidence, whether the evidence is of the utmost importance to the movant's case, and whether there are cogent reasons for denying the motion. *In re Marriage of Drone*, 217 Ill. App. 3d 758, 766, 577 N.E.2d 926, 932 (1991).

Under this standard, the trial court properly entered the final judgment order without conducting a further evidentiary hearing. First, Mr. Lakin provides little in the way of an excuse for his failure

to present the desired evidence at the prove up hearing. In his brief, he states: "At the time of the oral agreement, [Mr. Lakin] did not have access to the proper language concerning these provisions [pertaining to his stock and the security agreement]." More importantly, in the trial court Mr. Lakin indicated that he assented to the agreement and that he understood that it was final, and on appeal Mr. Lakin recognizes that the judgment accurately represents the settlement agreement into which he entered. The settlement agreement was complete and enforceable. *Lorton*, 203 Ill. App. 3d 823, 561 N.E.2d 156. In addition, it was *Mr. Lakin's* attorney who drafted the judgment order which he now attacks. Furthermore, as the trial court noted, Mr. Lakin could have filed a post-judgment motion. In sum, the trial court had cogent reasons to deny Mr. Lakin's request for a further evidentiary hearing.

The fact that Mr. Lucco was not present at the June hearing is a red herring. The full terms of the agreement had already been testified to and entered in the record in May, and the court had approved the agreement. Mr. Lakin's opportunity to be heard on the dissolution issues was at the prove up hearing. To the extent that he was requesting to reopen the proofs, one of his attorneys had the opportunity to argue that request to the court in June. Thus, the due process claim should fail. See *In re Marriage of Carlson*, 186 Ill. App. 3d 635, 640, 542 N.E.2d 760, 763 (1989).

I would affirm the trial court on all issues.